# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| DERRECK PERRY, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>SOUTHWESTERN ENERGY CO. d/b/a SWN ENERGY CO. | CASE NO: :17-cv-00848<br>COLLECTIVE ACTION (29 U.S.C. § 216(b))<br>CLASS ACTION (FED. R. CIV. P. 23) |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Derrick Perry brings this lawsuit to recover unpaid overtime wages and other damages from Southwestern Energy Company d/b/a SWN Energy Company ("SWN") under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act, 43 PA. STAT. ANN. § 333.104 ("PMWA").

2. Perry and the other workers like him regularly worked for SWN in excess of 40 hours each week.

3. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA and the PMWA, SWN improperly classified Perry and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

5. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

9. SWN is headquartered in this District and Division.

## THE PARTIES

10. Perry worked for SWN as a Drilling Consultant from approximately September 2011 until August 2015.

11. Throughout his employment with SWN, Perry was paid a day-rate with no overtime compensation and was classified as an independent contractor.

12. Perry's consent to be a party plaintiff is attached as Exhibit A.

13. Perry brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid pursuant to SWN's day-rate system. SWN paid each of these workers a flat amount for each day worked and did not pay them overtime for hours that they worked in excess of 40 hours in a workweek.

14. The class of similarly situated employees or potential class members sought to be certified is defined as:

> **Current and former wellsite supervisors / drilling consultants employed by, or working on behalf of, Southwestern Energy Co. during the past three years who were classified as independent contractors and paid a day-rate.**

15. Perry also seeks class certification of such a class under Federal Rule of Civil Procedure 23 for the PMWA claims.

16. SWN is a Texas corporation. SWN may be served by serving its registered agent for

service of process: **CT Corporation Systems, 1999 Bryan St, Suite 900, Dallas, TX, 75201**.

## COVERAGE UNDER THE FLSA

17. At all times hereinafter mentioned, SWN has been employers within the meaning of the section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all times hereinafter mentioned, SWN has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. At all times hereinafter mentioned, SWN has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as tools, cell phones, and personal protective equipment—that have been moved in or produced for commerce by any person and in that SWN has had an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

20. At all times hereinafter mentioned, Perry and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

21. SWN treated Perry (and indeed all of its workers that it classified as independent contractors and paid a daily rate to without overtime compensation) as employees and uniformly dictated the pay practices Plaintiffs and its other workers including its so-called "independent contractors".

22. SWN's misclassification of Plaintiffs as independent contractors does not alter their status as employees for purposes of the FLSA or the PMWA.

## FACTS

23. SWN is an energy services company providing personnel to operators and other

energy services companies throughout the United States, including in Pennsylvania.

24. Wellsite supervisors like Perry were paid by SWN on a day-rate basis, were misclassified by SWN as independent contractors, and make up the proposed Putative Class.

25. Wellsite supervisors may have also been called drillsite supervisors, but they had the same job duties and did the same work. They were all subjected to the same or similar illegal pay practices for similar work.

26. SWN classified all of these workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

27. For example, Perry worked for SWN as a wellsite supervisor from approximately September 2011 until August 2015. Throughout his employment with SWN, he was classified as an independent contractor and paid on a day-rate basis.

28. In this capacity, Perry's primary job duties included monitoring drilling fluids activities at jobsites, operating oilfield equipment, coordinating transfer of fluids between rigs, controlling drilling fluids within defined specifications, and building and maintaining various fluid systems associated with the drilling and completion of wells, as needed. Perry worked well in excess of 40 hours each week while employed by SWN, often for weeks at time.

29. The work Perry performed was an essential part of SWN's core business.

30. During Perry's employment with SWN while he was classified as an independent contractor, SWN and/or the client it contracted with exercised control over all aspects of his job.

31. SWN did not require any substantial investment by Perry in order for him to perform the work required of him.

32. SWN determined Perry's opportunity for profit and loss. Perry was not required to

possess any unique or specialized skillset (other than that maintained by all other employees in his respective position) to perform his job duties.

33. Perry worked for SWN as an independent contractor from approximately September 2011 until August 2015.

34. Indeed, SWN and/or the client it contracted with controlled all of the significant or meaningful aspects of the job duties performed by Perry.

35. SWN ordered the hours and locations Perry worked, tools used, and rates of pay received.

36. Even though Perry often worked away from SWN's offices without the presence of a direct supervisor employed by SWN, SWN still controlled all aspects of Perry's job activities by enforcing mandatory compliance with SWN's and/or its client's policies and procedures.

37. No real investment was required of Perry to perform his job.

38. More often than not, Perry utilized equipment provided by SWN and/or its clients to perform his job duties. Perry did not provide the equipment he worked with on a daily basis.

39. SWN and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Perry worked.

40. Perry did not incur operating expenses like rent, payroll, marketing, and insurance.

41. Perry was economically dependent on SWN during his employment.

42. SWN set Perry's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for SWN.

43. SWN directly determined Perry's opportunity for profit and loss. Perry's earning opportunity was based on the number of days SWN scheduled him to work.

44. Very little skill, training, or initiative was required of Perry to perform his job duties.

45. Indeed, the daily and weekly activities of the Putative Class Members were routine

and largely governed by standardized plans, procedures, and checklists created by SWN and/or its clients. Virtually every job function was pre-determined by SWN and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

46. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

47. The Putative Class Members did not have any supervisory or management duties.

48. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing energy operations in the field.

49. Perry performed routine manual and technical labor duties that were largely dictated by SWN and/or its clients.

50. Perry was not employed by SWN on a project-by-project basis. In fact, while Perry was classified as an independent contractor, he was regularly on call for SWN and/or its clients and was expected to drop everything and work whenever needed.

51. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

52. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

53. SWN's policy of failing to pay their independent contractors, including Perry, overtime violates the FLSA and PMWA because these workers are, for all purposes, employees performing non-exempt job duties.

54. It is undisputed that the contractors are operating oilfield machinery, performing manual labor, and working long hours out in the field.

55. Because Perry (and SWN's other independent contractors) was misclassified as an independent contractor by SWN, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

56. SWN's day-rate system violates the FLSA and the PMWA because Perry and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA Violations

57. As set forth herein, SWN has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

58. SWN knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. SWN's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

59. Accordingly, Perry and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### PMWA Violations

60. Perry brings this claim under the PMWA as a Federal Rule of Civil Procedure 23 class action.

61. The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

62. At all relevant times, SWN was subject to the requirements of the PMWA.

63. At all relevant times, SWN employed Perry and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

64. The PMWA requires employers like SWN to pay employees at 1.5 times the regular rate of pay for hours worked in excess of 40 hours in any one week. Perry and each member of the Pennsylvania Class are entitled to overtime pay under the PMWA.

65. SWN had a policy and practice of misclassifying Perry and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

66. Perry and each member of the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

67. Perry and each member of the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by SWN, as provided by the PMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

68. Perry incorporates all previous paragraphs and alleges that the illegal pay practices SWN imposed on Perry were likewise imposed on the members of the Classes.

69. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the state wage laws of Pennsylvania.

70. Numerous other individuals who worked with Perry indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

71. Based on his experiences and tenure with SWN, Perry is aware that SWN's illegal

practices were imposed on the members of the Classes.

72. The members of the Classes were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of 40 hours per week.

73. SWN's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the Classes.

74. Perry's experiences are therefore typical of the experiences of the members of the Classes.

75. The specific job titles or precise job locations of the various members of the Classes do not prevent class or collective treatment.

76. Perry has no interests contrary to, or in conflict with, the members of the Classes. Like each member of the Classes, Perry has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

77. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

78. Absent this action, many members of the Classes likely will not obtain redress of their injuries and SWN will reap the unjust benefits of violating the FLSA and applicable state labor laws.

79. Furthermore, even if some of the members of the Classes could afford individual litigation against SWN, it would be unduly burdensome to the judicial system.

80. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

81. The questions of law and fact common to each of the members of the Classes

predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a)    Whether SWN employed the members of the Classes within the meaning of the applicable state and federal statutes, including the FLSA and the PMWA;

    (b)    Whether the members of the Classes were improperly misclassified as independent contractors;

    (c)    Whether SWN's decision to classify the members of the Classes as independent contractors was made in good faith;

    (d)    Whether SWN's decision to not pay time and a half for overtime to the members of the Classes was made in good faith;

    (e)    Whether SWN's violation of the FLSA and the PMWA was willful; and

    (f)    Whether SWN's illegal pay practices were applied uniformly across the nation to all members of the Classes.

82. Perry's claims are typical of the claims of the members of the Classes. Perry and the members of the Classes sustained damages arising out of SWN's illegal and uniform employment policy.

83. Perry knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

84. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

### JURY DEMAND

85. Perry demands a trial by jury.

### RELIEF SOUGHT

86. WHEREFORE, Perry prays for judgment against SWN as follows:

    (a)    For an order allowing this action to proceed as a collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding SWN liable for unpaid back wages, and an equal amount of liquidated damages, due to Perry and the class members;

(c) For an order designating the state law classes pursuant to Federal Rule of Civil Procedure 23;

(d) For an order appointing Perry and his Counsel to represent the interests of the both the federal and state law classes;

(e) For an order awarding Perry and the class members the costs of this action;

(f) For an order awarding Perry and the class members their attorneys' fees;

(g) For an order awarding Perry and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

(h) For an order awarding Perry and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(i) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Matthew S. Parmet*
    _____
    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    S.D. Tex. ID No. 21615
    Matthew S. Parmet
    Texas Bar No. 24069719
    S.D. Tex. ID No. 1076547
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:   (713) 877-8788
Telecopier:   (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

**Attorneys for Plaintiff**